## No. 14,161.

### AMIDON ET AL. *v.* BETTEX.
(77 P. [2d] 1032)

Decided March 28, 1938.

Mr. H. E. Brayton, Mr. Thos. L. Bartley, for plaintiffs in error.

Mr. Walter L. Grutter, Messrs. Chutkow & Atler, for defendant in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

This action by Bettex, defendant in error, is for recovery of real estate broker's commission claimed to be due him from plaintiffs in error. Upon trial to the district court of Yuma county, he obtained a joint and several judgment against each of the plaintiffs in error for the full amount of the claimed commission in the sum of $425.00, together with accrued interest in the sum of $43.09, making a total judgment of $468.09. To reverse this judgment, error is assigned. Reference will be made to the parties as they were aligned in the trial court, as plaintiff and defendants.

The defendants comprised a bondholders' committee representing the holders of $12,900 of an $18,000 issue against the Armknecht River Ranch in Yuma county under a bondholders' agreement dated December 1, 1923. On June 6, 1934, the committee had commenced, or was about to commence, foreclosure proceedings under the terms of the mortgage, and on that day gave to plaintiff an option which is as follows:

"June Sixth 1934

"Mr. Harold Bettex
Wray
Colorado
"Dear Sir
"We, the undersigned, hereby give you a Ninety day exclusive option to sell what is known as the Armknecht River Ranch in Yuma County, Colorado, together with all water rights and improvements thereon, for a purchase price of Nine Thousand Dollars ($9,000) cash, net to the undersigned, the within option to expire automatically on September 6th, 1934, unless exercised. This option is only for whatever title we have in said land, and is only binding upon the undersigned as a committee and not individually and only to the extent of the bondholders agreement which was heretofore signed.

"Thomas L. Bartley
C. E. Amidon
N. E. Crist
"Bondholders Committee representing $12,900 in bonds of an issue of $18,000 against above property."

Plaintiff, as a broker, then became active in the procurement of a purchaser, and thereafter followed communications between plaintiff and H. E. Brayton, representing the committee, the pertinent parts of which are a telegram, a letter, and also involved is a contract between the committee and Pyle, a purchaser procured by plaintiff, and a memorandum authorizing payment of

$425 to plaintiff as commission signed by Amidon, one of defendants, and H. E. Brayton. The telegram dated August 23, 1934, is as follows:

"Harold Bettex
Wray, Colo.

"On understanding twenty five hundred down payment balance on issuance foreclosure certificate we accept eighty-five hundred cash for certificate and pay taxes and commission five per cent subject to lease expiring next February other conditions my letter August thirteenth shall we come Friday on this understanding wire answer.

"H. E. Brayton."

In the letter of August 13th, from Brayton to plaintiff, to which reference is made in the telegram is the following language: "* * * I called a meeting of the note holders committee and they have authorized me to state that if you will get a proposition in writing from your parties to purchase the rights of the committee, including the foreclosure and a quit claim deed from the committee * * * on a deal of this kind, the committee will pay you a commission not exceeding five per cent * * *." The negotiations immediately following culminated in the contract between the committee and Pyle, the purchaser, dated August 24, 1934, the substance of which is to the effect that the committee agreed to sell, and Pyle agreed to purchase, such certificate of purchase as would be issued to the committee upon the foreclosure, for the consideration of $8,500, $2,500 to be immediately deposited in the National Bank of Wray, Colorado, the balance to be paid to the order of the committee when it had made and delivered an assignment of the certificate of purchase and quitclaim deed. This contract is silent as to the matter of a commission to plaintiff and also is silent as to the nonliability of the individual members of the committee. Upon execution of this contract, an escrow was placed in the bank with the following memorandum:

"Wray, Colo.
Aug. 24, 1934.
"Mr. William Pyle,
Wray, Colo.
"Dear Sir:
"You are hereby authorized to pay to Harold Bettex the sum of Four Hundred Twenty-five Dollars, as commissions on sale of Armknecht River Ranch out of the final payment on your contract for the purchase of certificate of purchase this day entered into, when said final payment shall be due from you under the terms of said contract.

"Claude E. Amidon
H. E. Brayton
"Committee appointed by note-holders committee."

Throughout the negotiations including the execution of the contract, the committee agreed to prosecute the foreclosure proceedings to a termination and procure the certificate of purchase. The foreclosure was completed, but neither the committee nor the purchaser bid at the foreclosure sale and the certificate of purchase was acquired by another party. Plaintiff made claim to the committee for his commission and upon refusal brought this action against the members as individuals. At the trial and here, the committee defends the action upon the ground that it had specifically provided for the nonliability of the individuals composing the committee, in the option of June 6, 1934, hereinabove set out. They contend that their individual liability is specifically excluded by this option. If the option stood alone as the true basis of the cause of action, this contention would have appeal. Subsequent proposals, however, on terms merged into the written contract, related to such an entirely different subject matter, with resultant obligations, that the option became obsolete, and with it, all reservations of non-individual liability disappeared. The instrument to which reference is made is an option to sell

the ranch and the improvements thereon for the cash sum of $9,000. The plaintiff, for an offered commission of five per cent, found a purchaser ready, willing and able to buy the certificate of purchase to be obtained by defendants at the foreclosure sale, for the sum of $8,500. This party entered into a contract with defendants, binding him to do so, and deposited $2,500 in escrow to that end. Brayton's letter to plaintiff discloses the offer to pay the commission, and the memorandum attached to the escrow, authorizes its payment. All of this constitutes an entirely new and independent agreement. The true gist of this action is the agreement to pay a commission, which was indisputably and wholly independent of the option relied upon by defendants.

The record does not disclose that the note holders were advised of any of the transactions, but such transactions were carried forward by the committee and its authorized representative. If the committee was authorized by the note holders to enter into the subsequent negotiations which provided for the payment of a commission, and further for certain conditions to be performed by the committee, then when the committee failed to perform its undeniable part of the contract to the damage of plaintiff, the members thereof became liable individually. If the committee had no authority to enter into the negotiations and agreement with plaintiff, then such negotiations were beyond their authority and the members again would be individually liable for any attendant damage to plaintiff. If an agent exceeds his authority, by reason of which his principal is not bound by his actions, the agent becomes liable for any damage thereby occasioned to the other party to a contract. The committee or its members who signed the contract did not carry out the terms of the written agreement, because they failed to even attempt to procure the certificate of purchase at the foreclosure sale. This they had led plaintiff to believe they would do, and it was such certificate they contracted to sell to Pyle, whom plaintiff

had procured as the purchaser. This party procured by plaintiff, was not a purchaser for the land, but for all that defendants had to offer. A casual reading of the contract between the members of the committee and Pyle clearly discloses that it was the intention of the members of the committee, now defendants, to proceed to secure the certificate of purchase, and Pyle, the purchaser, bound himself to purchase such certificate from defendants, and he would have been liable in any event to do so regardless of the cost thereof to the defendant members of the committee. These members were careful to enter into a contract that would bind the purchaser, and in so doing, bound themselves individually under the facts in the case. It was possible for the defendant members of the committee to perform the contract so made, and their failure to even attempt to secure the certificate of purchase, was entirely of their own voluntary preference in the matter. No outside condition or circumstance beyond their control prevented their performance. When they elected not to secure and convey the subject matter of the contract, they did so at their individual peril.

The judgment of the trial court is right and is therefore affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE BAKKE concur.